

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**

FILED
JAMES J. VILT, JR. - CLERK

NOV 2 0 2023

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

| | | |
|---|---|---|
| J.I.W. <br> % PO Box 2134 <br> Danville Kentucky 40203 | } <br> } <br> } <br> } | |
| Plaintiff, | } <br> } | Case No. 3:23-CV-428-DJH |
| v. | } <br> } <br> } | |
| John C. Koski Jr., Michael Huffines, <br> and Unknown HSI and FBI Agents, | } <br> } <br> } | |
| Defendants. | } | |

**Motion Requesting Plaintiff Be Allowed To Proceed Under A Pseudonym**

**AND**

**Response To This Courts *SHOW CAUSE* Order.**

      Plaintiff J.I.W., proceeding pro se, respectfully submits this motion.  The plaintiff first apologizes for the violation of the federal rules of civil procedure and the local rules of the Western District by not first obtaining permission to file the complaint anonymously.

      Per his honor's order in DN-09, filed 11/08/2023, the plaintiff was to (4) either "file an amended complaint under his legal name" *or* "**SHOW CAUSE** why the Court should not dismiss this matter for lack of jurisdiction."  The *Show Cause* order is understood by the plaintiff to be a requirement to file a motion that seeks the courts permission to continue under a pseudonym, providing arguments and/or case law that justifies such allowance.  The plaintiff's understanding is construed from (5) …"J.I.W. may renew this  motion [motion for service] after filing an amended complaint *or* obtaining the Court's permission to proceed anonymously".  Plaintiff respectfully request if the Court does not allow the plaintiff to proceed under a pseudonym, that it will give time for plaintiff to amend the complaint with true identity rather than dismiss the complaint for lack of jurisdiction.

For the purposes of this *Show Cause* order the plaintiff requests that his identity be pseudo-anonymous[1] *at least* until the Federal Agents in this Bivens action have been served. The plaintiff believes that he should be allowed to proceed entirely anonymously and the documents sealed and the case held in abeyance until the related criminal matter is resolved. Proceeding anonymously would act to protect his 5th amendment rights (the right to remain silent and the right to not self incriminate) in that criminal matter.  The government has been given broad and unfettered approval to seal *all* discovery via a protective order in the criminal matter at the government's discretion, it would present unequal treatment under the law for the same leeway not to be granted the plaintiff in this Bivens action *at least* until the Federal Agents have been served, if not until resolution of the criminal matter.

Further the plaintiff by and through this motion argues that the plaintiff be granted permission permanently to proceed under a pseudonym for the reasons given below.

**I Arguments regarding mitigation of further harms**

Granting the Plaintiff anonymity is a necessary measure, not merely for privacy but as a critical protection against the perpetuation of irreparable financial and reputational harm – the principal harms for which damages are sought.  In this Bivens Action, the complaint revolves around significant risks and harms faced by the Plaintiff, including threats to personal and familial safety, severe reputational damage, and potential retributive actions amidst an ongoing criminal investigation.  Central to this Bivens action are two primary harms[2] experienced by the Plaintiff as a direct consequence of the Bivens defendant(s)' [hereinafter referred to as Federal Agents] alleged actions in the related criminal matter:

1.  **Reputational Harm:** The Plaintiff has suffered an irreparable loss of reputation and standing within the community, a direct result of the Federal Agents(s)' conduct. This loss extends beyond mere perception, affecting tangible aspects of the Plaintiff's social and professional life.

2.  **Financial Impact:**
    a.  **Lost Wages:** The Plaintiff has incurred a loss of income due to detention conditions imposed in the criminal case.
    b.  **Legal Expenses:** Substantial attorney fees have been necessitated for the Plaintiff's defense in relation to the criminal charges.

---

[1] The plaintiff does not object to filing his identity with the court under seal and that his identity be made available to the defendants under a protective order leaving the revelation of his identity only to the court and the Federal Agents.

[2] Plaintiff has suffered additional harms not included in this motion.

c. **Future Economic Opportunities:** The Plaintiff's career prospects, particularly in fields requiring security clearances and background checks such as technology and national defense, have been significantly jeopardized.

These quantifiable harms underscore the urgency and necessity of this motion. The Plaintiff's request to proceed under a pseudonym is not only a measure to safeguard against further damage but also an effort to pursue justice without exacerbating the already significant personal and professional repercussions of the Federal Agent(s)' actions.

The Plaintiff's concern for reputational harm, is analogous to that depicted in the 2008 theatrical narrative 'Doubt,'[3] which extends beyond the cinematic portrayal to real-world implications. Allegations of sexual misconduct, particularly involving minors, regardless of their substantiation, often leave an indelible mark, casting a long shadow of doubt and social exclusion. In the film, both the characters and the audience grapple with a haunting, unresolved dilemma, perpetually questioning Hoffman's character's guilt or innocence – a portrayal that mirrors the potential enduring impact of similar allegations in the Plaintiff's own life. Such allegations embed a persistent question in the minds of the audience/public/colleagues/friends etc. — 'what if it was true?' — leading to prolonged ostracism and irreversible damage.[4] This underscores the real-world impact of the narrative and reinforces the Plaintiff's need for pseudonymity to mitigate additional harms from the expected lifelong impacts, thereby protecting against further unwarranted stigma and exclusion.

In assessing the rationale for proceeding under a pseudonym, it is crucial to understand the essence of the harm that forms the basis of this case. The primary harms here stem from mere allegations, which, even in their unsubstantiated state, have the power to inflict significant reputational damage. Consequently, compelling the Plaintiff to further publicize his identity in the

---

[3] Meryl Streep, Philip Seymour Hoffman, Viola Davis, and Amy Adams all received Academy award nominations for an Oscar for their roles in this influential movie.  Hoffman plays a charismatic priest at a catholic school where Streep is a Sister and principal of the school.  Streep suspects Hoffman's character of having an inappropriate relationship with a student.  The narrative explores themes of suspicion, moral certainty, and power dynamics. "Doubt" is notable for its ambiguous narrative, leaving the audience uncertain about whether Father Flynn is guilty or innocent. The film's open-ended conclusion invites viewers to contemplate the dangers and lasting effects of allegations without irrefutable evidence.
[4] Reasonable doubt is no substitute for proof of actual innocence when it comes to reputation.  Courts, and Jury's are rarely concerned with the restoration of a defendant's life, but instead decide on whether or not to jail, and permanently brand the person a criminal.

pursuit of justice paradoxically[5] exposes him to the very harms he seeks redress for.  This contradiction highlights the necessity for pseudonymity to ensure that the pursuit of legal remedy (for defamation) does not exacerbate the Plaintiff's vulnerabilities and further undermine his reputational standing.

In the current digital era, the ease of accessing personal information online, even false and defamatory information[6], poses significant privacy concerns. A simple search on platforms like Google can reveal extensive details about an individual, including mentions in legal databases like Courtlistener.com[7] and other open-access legal resources. This heightened public exposure, particularly when it involves identifiable information, carries substantial risks not only for the Plaintiff but also for his family. The repercussions of such exposure would detrimentally affect their professional lives and standing within the community.

The nature of the internet, with its tendency to amplify and circulate information rapidly and often without necessary context or verification, further magnifies these risks. In cases like this, where the Plaintiff and his family are well-integrated and hold a respected position in their community, the indirect yet potentially severe consequences of widespread public attention cannot be overstated.[8] Anonymity in this case is thus not only a measure to protect the Plaintiff but also a shield for his family, guarding against the undue and far-reaching effects that uncontrolled public exposure can have in the digital landscape. In granting this request, the Court would be acknowledging and addressing the unique challenges posed by the internet era in the context of legal proceedings.

In advocating for the Plaintiff's anonymity, it is pertinent to invoke the enduring principle that 'justice is blind.' This tenet holds that justice should be dispensed impartially, free from bias or influence, and without undue emphasis on the identities of the individuals involved. In the

---

[5] This situation is absurdly  analogous to a plaintiff who seeks damages for an injurious gunshot wound but is then required to endure a similar injury merely to initiate legal action.

[6] Plaintiff is presumed innocent until the criminal matter against him is resolved. Therefore all publicity from this Bivens action would highlight what plaintiff believes are defamatory statements made by the Federal Agents in the related criminal action.

[7] Casetext.com, LexisNexis, caselaw.com, Cornell Law Library etc.

[8] The most extreme examples might be the Amber Heard and Johnny Depp trial.  Another victim of unsubstantiated allegations Kevin Spacey was accused of terrible crimes and prosecuted or sued in relation to four opportunist  in separate trials, each case of which was quickly and easily dismantled by exculpatory facts, yet, Spacey has lost more than $450 Million in direct damages, and his reputation utterly destroyed forever.  Had he been allowed to proceed under a pseudonym until after the cases were litigated, his life and career could be very different today.

context of this case, allowing the Plaintiff to proceed under a pseudonym embodies this principle, ensuring that the criminal case's focus remains squarely on the merits and substance of the legal arguments presented.

The anonymization of the Plaintiff in no way detracts from the transparency or the integrity of the judicial process. Instead, it aligns with the foundational belief that the administration of justice should be based on fairness and the objective assessment of facts and legal merits. The identity of the Plaintiff, in this instance, is less critical than ensuring that the process of seeking and administering justice is not compromised by extraneous factors, such as potential harm to reputation or personal safety. There is little wonder, despite the fact that nearly every day a new video arises on the news or social media of constitutional violations on behalf of the government law enforcement, yet there is still very rarely a section 1983, Bivens or FTCA complaint made by the victims.

**II Governmental Retribution**

In light of the significant powers held by prosecutors, as delineated in the 6th Circuit's United States v. Zakhari decision and further supported by Andrews, 633 F.2d at 453, the utilization of a pseudonym in a Bivens or 1983 civil action becomes crucial. The rationale for this request centers on safeguarding the integrity of the ongoing criminal proceedings and protecting the Plaintiff from any potential unintended consequences in his criminal case that may arise from filing this Bivens Action.

The introduction of a civil suit under the Plaintiff's real name has the potential to attract undue attention and implicit bias, strengthening the likelihood of influencing the criminal case. The government's approach in these proceedings, as observed, suggests a willingness to pursue extensive measures, which raises concerns about the possible impact of this civil case being publicly linked to the Plaintiff.

Although it is recognized that the close proximity and working relationship between the federal agents and the prosecutors involved in the criminal case make complete anonymity challenging, using a pseudonym in this civil suit offers a significant layer of protection. It serves as a firewall, minimizing the risk of the civil action unduly affecting the criminal proceedings.

Therefore, the request for the Plaintiff to proceed under a pseudonym is not an indictment of the government's conduct but rather a precautionary step to preserve the impartiality and fairness of both the civil and criminal cases. This measure is sought to ensure that the proceedings are based on their respective merits, free from any potential external influences or perceptions of bias.

**III Case Law:**

Under *Doe v. Stegal*,

"The Federal Rules of Civil Procedure require plaintiffs to disclose their names in the instrument they file to commence a lawsuit. Fed.R.Civ.P. 10(a). Public access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,100 S.Ct. 2814, 2829 & n.17, 65 L.Ed.2d 973 (1980).

The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical. The public right to scrutinize governmental functioning, 100 S.Ct. at 2827, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials, *see Richmond Newspapers,* 100 S.Ct. at 2826-29, are not inevitably compromised by allowing a party to proceed anonymously. Nevertheless, there remains a clear and strong First Amendment interest in ensuring that "[w]hat transpires in the courtroom is public property." *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947).

Yet, there is precedent for departing from a procedural custom fraught with constitutional overtones to accommodate a plaintiff's asserted need to proceed anonymously through the use of a fictitious name. *See* cases compiled in *Southern Methodist University Ass'n,* 599 F.2d at 712-13 nn.8, 9, 10, 11 & 12. The task before the court in this case is to decide when "the normal practice of disclosing the parties' identities yields 'to a policy of protecting privacy in a very

private matter.' " *Id.* at 713, *quoting Doe v. Deschamps*, 64 F.R.D. 652, 653 (D.Mont. 1974)."

- Doe v. Stegall, 653 F.2d 180 (5th Cir. 1981)

Plaintiff respectfully requests this Court to consider the 5 factors outlined below,  from the 4th circuit *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) case, in deciding whether to allow him to proceed in an anonymous or pseudo-anonymous fashion.  The factors serve as "guideposts from which a court ought to begin its analysis." In *re Sealed Case*, 931 F.3d at 97. These five factors are:

(1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent[9] non-parties;

(3) the ages of the persons whose privacy interests are sought to be protected;

(4) whether the action is against a governmental or private party; and relatedly,

(5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously

-Id. (citing James, 6 F.3d at 238)

In applying the five-factor test from 'James v. Jacobson' and the criteria from to the present case, the need for pseudonymity is clear and compelling:

1. **Privacy in a Sensitive Matter:** The nature of the allegations in this case is both sensitive and highly personal, impacting not only the Plaintiff but also his family and their private and professional lives. The privacy concerns here go beyond mere inconvenience and squarely fall into the realm of preserving privacy in a matter of sensitive and highly personal nature.[10]

2. **Risk of Retaliatory Harm:** Physical violence against persons convicted or accused of violence against children is fairly common in the United States.  Retaliation against the

---

[9] Plaintiff also has the presumption of innocence at this time

[10] Even medical malpractice victims and victims of violence or sexual violence don't receive the same type of scrutiny or repudiation that a person accused of sexual violence against children receives.

defendant's, convicts and even the acquitted who were accused of such acts is common in the criminal justice system to the extent they must be segregated from the common population of a prison or jail.

3. Age of the plaintiff and Federal Agents are not a factor argued.

4. **Action Against Governmental Entities:** The Bivens action is against the government and agents of the government acting in their capacity under the color of law and not as private citizens, thus the requirement is unequivocally met.  The plaintiff currently has many constitutional rights stripped as conditions for release allowing law enforcement to invade his home without a warrant.  The prosecutors and investigators have great leeway and "awesome power" in his pursuit once an indictment has been handed out; and the danger of inflaming the government's prerogative to punish the plaintiff for filing suit in a vindictive fashion would be difficult to prove. In the words of one criminal defense attorney speaking in 2023 about a failed appeal, "The judges hate *these* people".

5. **Fairness to Opposing Party:** There is no perception of unfairness to the Federal Agents by allowing the plaintiff to proceed by using a pseudonym.  In fact, the plaintiff had argued that until such time as the Federal Agents have been shown to be liable for their actions, there was no need to disclose their identities to the public either.


In the Doe v. Stegall, 653 F.2d 180 (5th Cir. 1981) they contemplate only 3 factors:

(1) when identification creates a risk of retaliatory physical or mental harm;

(2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and

(3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution."

In also applying the three factor test from '*Doe v. Stegall*' to the present case, the need for pseudonymity is clear and compelling:

(1) As was the argument in the James v. Jacobson factors, this requirement is clearly and inarguably met.

(2) The topic is very sensitive and highly personal, as was the argument for the privacy and sensitivity in the James v. Jacobson factors, this requirement is clearly and inarguably met.

(3) **Fifth Amendment Considerations**: This factor is an invocation of the 5th amendment to remain silent.  Unless the suit is held in abeyance, anything said can and *will* be used against the plaintiff in the court of law. Thus while this Bivens action hinges only on what the Federal

Agents in the criminal matter may have written within the four corners of the search warrant affidavit, or known at the time; the mere fact of the government's indictment against the Plaintiff has engendered a state of ongoing legal jeopardy. Consequently, this factor is unequivocally met in the instant case.  The Plaintiff's right not to self-incriminate, a cornerstone of our legal system, is directly implicated in the proceedings of this Bivens action. While granting the request for pseudonymity in this Bivens action would add a thin veil of protection related to the 5th amendment concerns, it offers false security. Therefore plaintiff expects to renew motion for holding in abeyance and sealing certain documents containing personal identifiable information in the future at least until the criminal matter is resolved, ensuring that the Plaintiff's engagement in the Bivens action does not inadvertently incriminate him or compromise his defense in the related criminal proceedings by allowing the government to use his words against him.[11]

**VI Conclusion**

Granting anonymity in this case not only serves to protect the Plaintiff and his family from further harm but also upholds the integrity of the legal process by focusing on the equitable resolution of the dispute at hand. In accordance with the principle that justice, indeed, should be blind to all but the facts and the law.   The public will still benefit from being able to observe the proceedings of the case.[12]

In light of the arguments and legal precedents presented herein, the Plaintiff respectfully requests that this Honorable Court grant permission to proceed under the pseudonym J.I.W. in this Bivens action. The specific circumstances of this matter, underscored by significant concerns for personal safety, privacy, and potential reputational harm, and an action involving government's actors' improprieties, justify a departure from the norm of open court proceedings in favor of protecting the Plaintiff's fundamental rights.

The cited case law, including Doe v. Stegall and James v. Jacobson, provides a clear legal basis for granting pseudonymity in cases where the exposure of a party's identity could

---

[11] The jeopardy the plaintiff places himself in, is not by representing himself pro se. Neuter is it due to delusions of grandeur or ignorance, but by the very necessity of timeliness to ensure the suit was filed in a timely manner to meet the statutes.  An exhaustive search of the nation's Bivens actions attorneys revealed that most are not inclined to represent Bivens actions until the criminal matters have already been resolved; thus once the criminal matter is resolved, it is more likely than not that an attorney will make an appearance in this civil matter.

[12] *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555,100 S.Ct. 2814, 2829 & n.17, 65 L.Ed.2d 973 (1980)

result in undue harm(s). In accordance with these precedents, and considering the specific risks and challenges faced by the Plaintiff, it is both reasonable and necessary to allow for anonymity in these proceedings.

Furthermore, granting this request aligns with the principles of justice and fairness that are the cornerstone of our legal system. It ensures that the Plaintiff can seek redress for grievances without fear of further harm or retribution, and without having to waive his 5th amendment or other constitutional rights in the process, thus upholding the integrity of the judicial process.

In conclusion, the Plaintiff respectfully urges the Court to consider the gravity of the circumstances outlined in this motion and to grant the request to proceed under a pseudonym. Such a decision would not only protect the Plaintiff's interests but also serve the broader purpose of ensuring a fair and just legal process.

Respectfully submitted,

J.I.W
Pro Se
PO Box 2134
Danville, Kentucky 40203
John.Doe.Plaintiff.Kentucky@gmail.com


Signed:_____


Dated:___11/20/2023___